TOONE, The JOSEPH H. See Cases Nos. 7,540–7,543.

TOPEKA (CITIZENS' SAV. ASS'N v.). See Case No. 2,734.

TOPLIFF (CONCORD R. CORP. v.). See Case No. 3,093.

## Case No. 14,099.

TOPPAN v. CLEVELAND, C. & C. R. CO.

[1 Flip. 74; [1] 9 Pittsb. Leg. J. 313; 4 West. Law Month. 67.]

Circuit Court, N. D. Ohio. March Term, 1862.

RAILROAD COMPANY — GUARANTY OF PAYMENT ON NEGOTIABLE SECURITY — LEGAL EFFECT OF — CONSIDERATION REQUIRED — PLEADING — WHEN ADMISSIONS ARE ESTOPPELS.

1. An indorsement of guaranty of payment upon a negotiable bond of a railroad company, having coupons attached and made before the security is delivered, as an evidence of indebtedness, is supported by the same consideration as that which upholds the original contract.

2. If such guaranty be general, it is negotiable, together with the instrument on which it is indorsed.

3. A consideration for the guaranty is required, where the instrument is made after the inception of the principal contract as security for indebtedness.

4. Where a railroad company has under general statute, though not by charter, authority to guarantee the payment of the bonds of another such company, in an action upon the guaranty it is not necessary to set forth in the declaration such authority for making the indorsement.

[Cited in Smith v. Tallapoosa County, Case No. 13,113.]

5. A statute authorized the indorsement by one railroad company of a guaranty of the bonds of another, and provided that "no such aid shall be furnished * * * or arrangement perfected until a meeting of the stockholders of each of said companies shall have been called by the directors thereof at, * * * and the stockholders, or at least two-thirds of the stock of such company represented at such meeting, in person or by proxy, and voting thereat, shall have assented thereto;" held, that it was sufficient in an action by a bondholder against the guarantor to aver in the declaration "that the guaranty was duly signed by the defendant through its president, who was authorized so to execute the same, and was afterwards," to-wit: on the same day, "duly ratified and confirmed by the stockholders of said company."

6. The principle of law is, that where one of the parties is a corporation and contracts as such, although it has no power except those

2 [From 2 Ins. Law J. 275.]

1 [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

specifically granted or necessary to carry into effect the powers expressly granted, yet the presumption of law in regard to such contracts is always in favor of their validity until the contrary is shown. But this presumption only arises in cases where it appears that it had power to contract under its charter or the laws of the state

7. The true test of the sufficiency of a pleading is, whether the allegations in the declaration can be traversed by plea, for a traverse must be taken on a matter of fact, not of law. But where there is a mixed question of law and fact, there may be a traverse, for that is the only mode by which the facts are to be settled.

8. It is a principle of universal application that admissions, whether of law or fact, which have been acted on by others, are conclusive against the party making them in all cases between him and the party whose conduct he has influenced, and that a man shall not be permitted to repudiate his own representations. A corporation, quite as much as an individual, is held to a careful adherence to truth in its dealings with mankind, and cannot by its representations or silence involve others in onerous engagements, and then defeat the calculations and claims its own conduct has superinduced.

[This was an action by Christopher S. Toppan on negotiable bonds and coupons issued by the defendant, the Cleveland, Columbus & Cincinnati Railroad Company.]

Hitchcock, Mason & Estep, for plaintiff.
Ranney, Backus & Noble, for defendant.

WILLSON, District Judge. This case stands upon a demurrer to the first and second counts of the plaintiff's declaration.

Many grave and important principles were discussed by counsel in the argument, some of which it is deemed unnecessary to consider, in determining the issue of law raised by the demurrer.

The suit is brought against the defendant upon its guaranty indorsed upon sundry bonds of the Columbus, Piqua & Indiana Railroad Company. These bonds bear date April 1, 1854, and are all of the same tenor and effect, with interest coupons attached. The following is a copy of one of them:

"The Columbus, Piqua & Indiana Railroad Company acknowledge themselves to owe Elias Fassett, or bearer, one thousand dollars, which sum said company promise to pay to said Elias Fassett, or the holder hereof, at the office of the Ohio Life Insurance and Trust Company, Wall street, in the city of New York, on the first day of April, in the year 1869, and also interest thereon at the rate of seven per cent. per annum, semi-annually, on the first day of October next, and of each April and October thereafter until the said principal sum shall be paid on the presentation of the annexed interest warrants at said office. And the said company also agree to deliver to the holder hereof, at any time before said principal sum shall fall due, when such holder shall elect to receive the same, on the delivery of this obligation and the unpaid interest warrants to the trustee named in the annexed certificate, or to his successor in the trust, in the city of New York, or to the treasurer of said company, in the city of Piqua, Ohio, twenty shares, of fifty dollars each, of the capital stock of said company in exchange for and satisfaction of this obligation.

"And the said company further agree that this obligation, and all rights and benefits arising therefrom, may be transferred by general or special indorsement, or by delivery, as if the same were a note of hand payable to bearer, and hereby waive all benefits, from valuation or appraisal laws."

Signed by the president of the company, with the corporate seal affixed.

The interest warrants or coupons are also payable to the bearer or holder.

After the execution of said bonds and coupons, and before their negotiation and issue, the defendant guaranteed their payment by indorsing on the back of the bonds the words following:

"The Cleveland, Columbus & Cincinnati Railroad Company, for value received, hereby warrant and guarantee the punctual payment of the interest and principal of this obligation.

"In testimony whereof the said company, in pursuance of a resolution of the board, passed the 6th day of March, 1854, have caused these presents to be signed by its president this 7th day of April, 1854."

Which guaranty was afterwards, to-wit: on said 7th day of April, 1854, duly ratified and confirmed by the stockholders of said company.

The plaintiff became the owner and holder of the bonds and coupons so guaranteed on the 4th day of August, 1854, by purchase in the regular course of business, and for a valuable consideration.

It is alleged that the Columbus, Piqua & Indiana Company is insolvent, and that certain of the coupons are due and remain unpaid.

Both the first and second counts of the declaration contain the averments that the Columbus, Piqua & Indiana Company was a corporation created and organized under the laws of Ohio, empowered to issue bonds, notes and other evidences of debt, to borrow money at 7 per cent. interest, and authorized to construct, maintain and run a railroad from Columbus, Ohio, to the west line of the state.

That the Cleveland, Columbus & Cincinnati Company is a corporation of like powers, organized to construct, maintain and run a railroad from Cleveland, in Cuyahoga county, to Columbus, in Franklin county, Ohio, and being interested in the construction of the Columbus, Piqua & Indiana road, and being authorized by the laws of Ohio so to do, did indorse and guarantee the bonds of the last named company as aforesaid.

This statement of the case, though much abbreviated, is nevertheless deemed sufficient for a full apprehension of the questions of law raised by the demurrer.

It is insisted by the defendant's counsel—

(1) That this contract of guaranty is not negotiable; (2) that no sufficient consideration for the undertaking on the part of the defendant is averred and (3) that the defendant having no power under its charter to make the guaranty, the legal authority and the facts and circumstances contemplated by the act of 1852, by which such power could be obtained, should be fully set forth upon the record.

"A guaranty," said Verplank, in McLaren v. Watson's Ex'rs [unreported], in its legal and commercial signification, "is an undertaking to be answerable for the payment of some debt, or the due performance of some contract by another, who himself remains liable for his own default." If the guaranty be of a prior debt or contract, then there must be some good consideration received by the guarantor, and such consideration should be averred in the pleadings and proved on the trial. But where the guarantor holds out his engagement of secondary liability as an inducement to any one who may, upon the faith of that promise, give credit in any way to a party, then if there be no special consideration of benefit received by the guarantor, yet the same consideration of debt or damage which supports the claim against the principal in default, equally applies to, and supports the right of action against the guarantor.

Hence, as the guaranty, in this case, is a contract collateral to the bond, there is no force in the objection, that a distinct consideration should be averred.

It would be different had the guaranty been made after the execution of the bond and its delivery and receipt as a complete contract.

But here the record discloses the fact that the guaranty was made and indorsed on the bond before its issue and delivery by the Columbus, Piqua & Indiana Company. It was done for the benefit of that company, to add strength to its paper, and to induce third persons to take the bonds and to advance money upon them. We are clearly of the opinion that the credit thus given to the Columbus, Piqua & Indiana Company, is of itself, a good and sufficient consideration to support the contract of guaranty. 8 Cush. 154; 12 Wend. 381; 26 Wend. 425; 3 Burrows, 1662.

Again, it is argued that this guaranty is a special contract, a mere chose in action, and therefore not negotiable. It is claimed to be analogous in principle to an ordinary mercantile guaranty of a debt or purchase where the primary liability can go no further than the first parties.

The ordinary mercantile guaranty of a debt, is a contract to become liable for another, for some specific debt in the hands of a creditor, whose right to sue and enforce it, cannot be transferred. In such a case, the offer of guaranty is only of some specific transaction, which becomes final as to parties when the offer is accepted.

In the language of the court in Walton v. Dodson, 3 Car. & P. 163, "such a guaranty will enure to the benefit of those to whom or for whose use it was first delivered."

But the rule of law is different where the guaranty is for the payment of negotiable paper. That is a positive undertaking to become liable in case of the default of the original parties to the bond, note or bill, and such undertaking is held out to every person who may, on the faith of it, become the legal holder of such paper. Not, say the authorities, that the guaranty is, in itself, negotiable as a separate contract, but that it is a collateral promise to any and each person, in his turn, who may give credit to a negotiable bond, note or bill coupled with such guaranty.

In Ketchell v. Burns, 24 Wend. 456, the supreme court of New York declare, that on a guaranty indorsed upon a note, whereby the payment of the note is guaranteed to a third person or bearer, an action lies by any subsequent holder in his own name. And in Story, Cont. 738, the author broadly declares the law to be that "where a general guaranty is made upon the face of a promissory note or bill of exchange, and is not limited to a particular person, or restricted in its terms, but purports to be a guaranty to the payee or his order, or to the bearer, the guaranty is as negotiable as the bill or note, and accompanies it in the hands of every holder." 26 Wend. 425; 19 Wend. 202, 557; [3 Greenl. 233;] [2] 6 Conn. 315; [Adams v. Jones] 12 Pet. [37 U. S.] 207; 16 East, 355; 3 Car. & P. 162.

Now, the bonds in question, of the Columbus, Piqua & Indiana Company, are made negotiable by distinct and unequivocal terms. The language employed is: "And the said company further agree, that this obligation, and all rights and benefits arising therefrom, may be transferred by general or special indorsement, or by delivery, as if the same were a note of hand, payable to bearer."

The defendant's guaranty of payment, indorsed upon the bond, is not limited to any particular person, nor is it restricted in terms. The obligation, on the part of the defendant, is, in legal effect, an undertaking to pay the interest and principal as they severally become due, in default of the maker, and such undertaking extends to any person who may have become the holder of the paper by advancing money on the strength of the indorsement. Such clearly was the purpose and effect intended by the parties to the transaction.

We therefore hold, that, from the record in the case, it sufficiently appears, this guaranty was given for a good consideration, and also that it is negotiable, and as available in the hands of the holder as is the right to sue upon the bonds themselves.

It only remains to consider the third objection to the sufficiency of the pleadings,

---

[2] [From 9 Pittsb. Leg. J. 313.]

which is, that the defendant having no power under its charter to make the guaranty, the legal authority and the facts and circumstances contemplated by the act of 1852, by which such power could be obtained, should have been fully set forth upon the record.

The federal courts, sitting in any state, are bound to take judicial notice of the statutes of such state. Hence, a party in alleging a claim in his declaration, or a party in setting up a defense in his plea under a public law, is not required to set forth the statute in his pleadings.

It is sufficient that the facts are stated, which are necessary to bring the case within the operation of the statute, and to insist that upon those facts the right exists or does not exist. The court will then judicially notice the existence of the statute, and declare its legal effect upon the case as made by the pleadings.

The courts are, in like manner, bound to take judicial notice of the location of towns and cities, and the boundaries of counties, and of state lines.

There is still another principle of law which has application, where one of the parties is a corporation and contracts as such. And that is, that while corporations have no powers except those specifically granted, or such as are necessary for carrying into effect the powers expressly granted, yet the presumption of law arising in favor of such contracts, is always in favor of their validity, or, in other words, it will be presumed that the debt was due, or the obligation or other consideration was given in the lawful course of business, until the contrary is shown. This presumption, however, only arises in cases where it appears the corporation is empowered to contract under the authority of its charter, or the laws of the state.

The 24th section of the "Act to provide for the creation and regulation of incorporated companies in Ohio," passed May 1, 1832, declares that—

"Any railroad company heretofore or hereafter incorporated, may, at any time, by means of subscription to the capital of any other company, or otherwise, aid such company in the construction of its railroad, for the purpose of forming a connection of said last-mentioned road with the road owned by the company furnishing said aid; or any railroad company organized in pursuance of law, may lease or purchase any part or all of any railroad constructed by any other company, if said companies' lines of road are continuous or connected as aforesaid, upon such terms and conditions as may be agreed on between said companies respectively, or any two or more railroad companies whose lines are so connected, may enter into any arrangement for their common benefit, consistent with and calculated to promote the objects for which they were created: provided, that no such aid shall be furnished, nor any purchase, lease or arrangement perfected until a meeting of the stockholders of each of said companies shall have been called by the directors thereof at such time and place and in such manner as they shall designate, and the holders of at least two-thirds of the stock of such company represented at such meeting, in person or by proxy, and voting thereat, shall have assented thereto."

Here is the broad legislative grant of power to this defendant, to enter into any arrangement with another railroad company for their common benefit, consistent with and calculated to promote the objects for which they were created.

The question raised by the demurrer is, whether it was necessary for the plaintiff to aver in his declaration, that the aid or guaranty in question, was given by the previous assent of two-thirds of the stockholders of the company, at a meeting called by the directors for that purpose, in order to avoid the inhibition of the proviso contained in the act of 1852.

The averment in the declaration, is: "Which said guaranty was duly signed by the defendant, by its then president, who was authorized to execute the same, and was afterwards, to-wit, etc., duly ratified and confirmed by the stockholders of said company."

This is not a contest between a corporation and one or more of its stockholders, whose rights the proviso of the act was intended to protect. Nor is it a contest between a stockholder and a third person, who claims rights under alleged illegal acts of the officers of the corporation.

It is a controversy between a creditor and the corporation itself, in which the latter repudiates its own acts, and seeks to avoid a liability created by itself. The defendant, in legal effect, admits its liability by executing the guaranty and sending it forth to the world, challenging faith, credit and confidence in all who may be induced to act upon it. It is a principle of law of universal application (and as just as it is general) that admissions, whether of law or of fact, which have been acted upon by others, are conclusive against the party making them, in all cases between him and the person whose conduct he has thus influenced; and the principle is founded upon grounds of public policy, that a man shall not be permitted to repudiate his own representations. It was forcibly said by Mr. Justice Campbell, in regard to the validity of this identical guaranty, that "a corporation quite as much as an individual, is held to a careful adherence to truth in their dealings with mankind, and cannot by their representation or silence, involve others in onerous engagements, and then defeat the calculations and claims their

own conduct had superinduced." Zabriskie v. Cleveland, C. & C. R. Co., 23 How. [64 U. S.] 381.

It is a legitimate presumption, then, that the defendant, in executing the guaranty, had complied with all legal requirements and regulations, and especially so since it appears by the record, that the obligation was given by order of the board of directors, and subsequently ratified by the stockholders at a general meeting.

The plaintiff has not alleged in his declaration, that the guaranty was given by the previous assent of two-thirds of the stockholders, at a meeting called for that purpose. But we think, so far as third persons are concerned, in a suit against the corporation, that fact is wholly immaterial, and therefore need not be averred.

It is further objected by the defendant's counsel, that a traverse of law, and not purely a matter of fact, is tendered by the plaintiff's declaration.

It is said that the allegation in reference to the execution of the guaranty, to-wit, of "the defendants being thereunto duly authorized by the laws of Ohio," etc., is an attempt on the part of the pleader, to put in issue a mere legal conclusion.

The true test of the sufficiency of the pleading, undoubtedly is, whether the allegations in the declaration can be traversed by plea, for it is true, that a traverse should be taken on matter of fact, and not on mere matter of conclusion of law.

But where the virtute cujus raises a mixed question of law and fact, there may be a traverse, for that is the only mode by which the facts are to be settled on which the law depends.

Mr. Sergeant Williams says, "that where the words, 'virtute prætextæ per quod,'" etc., introduce a consequence from the preceding matter, they are not traversable; but that matter of law connected with fact, or rather matter of right resulting from facts, is traversable.

In the case of Barker v. Mechanic Fire Ins. Co., 3 Wend. 94, the averment in the declaration was, that "John Franklin, being the president of said company, and being thereunto duly authorized, and acting within the scope of the legitimate purposes of the company, on, etc., made a certain promissory note."

The supreme court of New York held the averment good and sustained the declaration.

In the case before us we are of opinion that the demurrer is not well taken, and should therefore be overruled.

NOTE. See Hamilton v. Zimmerman, 5 Sneed, 48, where almost the identical expressions are used on estoppel. The opinion in that case was delivered by McKinney, J., who was one of the ablest jurists that ever sat on the Tennessee supreme bench, and, it would not be too much to say, had few or no superiors in the Southwestern states.