Avert, J.
It appears, from the testimony offered below, that soon after the letter of credit was drawn, E. Carter & Co., at Cincinnati, commenced making shipments of produce to the defendants, by steamboats, according to the terms of the letter, and within the period of about one month, sent forward the produce by eight different shipments, of the value, in the aggre gate, of some ten thousand dollars. The first shipment was made on the 26th of February, 1846, on which day E. Carter & Co. drew their first bill upon the defendants, and forwarded it for discount to the bank, the plaintiff in the action. ■ They presented also at the same time, the above letter of credit and the bill of lading, and left them all with the bank. The bank, on the faith of the letter of credit, discounted the bill, and paid over the amount, in money, to E. Carter & Co. As each remaining shipment was made, the bill of exchange was drawn, *139 indorsed and, with the bill of lading, handed over to the plaintiff, who advanced the money upon it, and thus supplied E. Carter & Co. with funds, as they were needed to buy property that was to be shipped to the defendants. The first six of these bills of exchange were duly paid by the defendants ; the two last are the bills in controversy.
They were presented on the 16th of April, but without the bills of lading, and were then protested for non-acceptance. Afterwards, about the tenth of May, and before becoming due, they were again presented, accompanied by the bills of lading, when acceptance was again refused. Payment of the bills was demanded at maturity, but refused. The defendants now claim a right to apply the avails of the last two shipments to a balance in their favor against E. Carter & Co., and deny that they are under any legal obligation to pay the drafts. In the letter of credit which they signed, is an agreement that the bills shall be honored, which means that they shall be accepted and paid. That letter was an instrument sufficiently understood in the mercantile community. Its-well known object was to give credit to E. Carter & Co., to enable them, upon the strength of it, to raise money with which they were to purchase property to be consigned to the defendants. It has accomplished its end. If this be the meaning of the agreement, and the parties have acted upon such an understanding of its import, have they been mistaken ? Are there no legal rights or obligations between them created in the case ?
The plaintiffs insist that there are, and that they have a remedy against the defendants as acceptors, or upon their breach of the agreement to accept. It is certain that a promise to accept a bill of exchange, whether made before or after its date, may become, in effect, an acceptance, without being actually noted upon the bill itself; and if the defendants can be held as acceptors, the remedy in behalf of the plaintiffs is clear, and relieved from all difficulty.
But the authorities are not uniform as to the circumstances and acts necessary to constitute such an acceptance, when not *140 noted upon the bill. The case of Coolidge and others against Payson and others, 4 Condensed U. S. Reports 33, decided that “ a letter written within a reasonable time before or after the date of a bill, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance, binding the person who makes the promise.” The rule here laid down is again recognized in Boyce & Henry v. Edwards, 4 Peters’s U. S. Reports 121, where the court add, “ and this rule we believe to be in perfect accordance with the doctrine that prevails, both in the English and American courts, on this subject.”
The judgment was in that case reversed, because the court had instructed the jury that the evidence was sufficient to charge the defendants as acceptors. They say that the “ distinction between an action on a bill, and one founded on a breach of promise to accept, seems not to have been adverted to. * * * To maintain the former, as has been already shown, the promise must be applied to the particular bill alleged in the declaration to have been accepted.” That was an action of assumpsit on bills of exchange, and for the purpose of charging the defendants as acceptors, a letter of theirs was offered in evidence, in which authority was given to draw bills, but it did not describe them minutely, as required by the rule.
Under this decision, the count in the bills in the case before them, could not be sustained against the defendants, as acceptors. It will not, however, be necessary to examine other authorities, with a view to support the judgment on this count, if the plaintiffs in the action are entitled to recover on the other counts in the declaration, which charge a breach of promise to accept; for in such case, the judgment of the superior court of Cincinnati cannot be reversed. Our inquiry then will be, can a suit be maintained upon this letter of credit in the name of the plaintiffs ? It is said there is no privity of contract between the parties, and therefore the plaintiff has no right to institute a suit upon the agreement. The letter, it is *141 true, does not show any other names than Lonsdale & Gray, the writers, and E. Carter & Co., the persons to whom it is sent. But it is drawn for the express purpose of being shown to others, and of inducing them to make advancements of money for the object contemplated in it; and after the purpose has in this way been accomplished, to withhold a remedy against the writers, would seem to be giving a direct countenance, by law, to the perpetration of a fraud. It would be strange if authorities could not be found to obviate the difficulty supposed to exist in a ease like the present, from the want of a privity of contract.
It is said in the above case in 4th Peters, that courts have leaned latterly very much against extending the doctrine of implied acceptances; but they make use of this language at the same time with respect to a proceeding under a promise to accept, “ as it respects the rights and the remedy of the immediate parties to the promise to accept, and all others who may take the bills upon the credit of such promise, .they are equally secure and equally attainable, by action, for the breach of the promise to accept, as they are by an action on the bill itself.” The letter of credit in the above case, was addressed, to be sure, to Edwards, the plaintiff in the action, but the promise was not in terms made to him. The letter names another person— states that he is authorized to draw, and that his bills will be honored. But at all events, the language of the opinion applies clearly to a case circumstanced like the one now before the court.
In 2 Story’s Rep. 214, it is decided, “ that a promise contained in a letter of credit, written by persons who are to become the drawees of the bills drawn under it, promising to accept such bills when drawn, which letter is designed to be exhibited for the purpose of inducing persons to advance money on it, and take the bills when drawn, is an available contract ic favor of the persons to whom the letter of credit is shown, who advance money and take bills on the faith thereof.”
*142 This is a case directly in point, and restores, as far as it may be taken to be authority, the entire claim of the plaintiff.
But further, with respect to this objection, the event of privity of contract, the books abound with cases to show that it cannot be employed to defeat an action sustained as this has been by the evidence. See Carnegie et al. v. Morrison et al., 2 Mep. Rep. 381; McLaren v. Watson's Ex’rs, 26 Wend. Rep. 425; Lawrason v. Mason, 3 Cranch’s Rep. 492; Story on Bills 544, 545.
But supposing the objection as to parties removed, it has been urged in behalf of the defendants, that a recovery cannot be had, because no proof has been introduced to show what are the laws of Louisiana; that upon the principle of the “ lex loci contractus,” the law of that state must determine the rights and liabilities of the parties. That is not the view which the court has taken of this contract. The letter, indeed, is dated New Orleans, and the acceptances were to be there ; but the contract -was closed in Cincinnati; the bills were to be drawn and indorsed there ; the money upon them to be obtained, and the produce brought there. -With such a state of the facts, we suppose that Ohio furnishes the law of the contract.
It is further objected that there is no evidence of the acceptance of the terms contained in this letter, or at least of no acceptance within,the reasonable time, supposed to be necessary in the case, and no evidence of the timely notice to these defendants of the issuing of drafts under the authority of the letter.
The court does not regard this letter in the light of a com mercial guaranty requiring notice. In the case of Lanusse v. Barker, 4 W. S. Cond. Rep. 204, where the letter of credit contained, as does the one in controversy, a direct promise to honor the bills of the drawee, the court distinguishes between a mere guarantee of bills to be drawn, and such a direct promise. They say, “ but where the defendant confers the right to draw upon himself * * * he makes himself the paymas *143 ter, and we consider it an original substantive undertaking. * * * The law on the subject of securityship undertakings cannot be applicable.
Lonsdale & Gray undertake, in their letter, to honor bills drawn on them at 30 days sight, or 60 days date, until the July following its date, and to the extent of $10,000, the same being accompanied by a bill of lading of shipments to their address by steamboats. The bills in controversy were taken by the plaintiffs on the faith of that letter, and in pursuance of its terms; they were presented before they were due, accompanied with the appropriate bills of lading, and afterwards, at the maturing of the bills, payment was demanded of these defendants. They have neither accepted nor paid the bills, and were therefore properly held liable in the action by the court below to pay them.

Judgment affirmed.