The St. Louis Building and Savings Association, Plaintiff in Error, v. Henry L. Clark and wife et als., Defendants in Error.

1. *Securities—Substitution—Equity.*—P. & Co., at New Orleans, gave to C., at St. Louis, letters of credit authorizing him to draw bills of exchange from time to time upon them. As security for these advances to be thus made, C. gave to P. & Co. a deed of trust upon real estate, providing that if any part of the bills accepted by P. & Co., or thereafter to be accepted, should

St. Louis Build. & Sav. Ass'n v. Clark and wife et als.

remain unpaid by C. on the 31st December, 1860, that the deed of trust might be foreclosed. This deed was recorded, and C. drew his bills and had them discounted. P. & Co. subsequently released part of the real estate covered by the deed of trust, and this release was also recorded, and the land conveyed as security for other parties. Upon a bill filed by the holders of the bills drawn by C., accepted by P. & Co., and protested for non-payment, P. & Co. having become insolvent, to set aside such release, and to enforce the security in favor of the holder: *Held*, that by its terms the deed of trust was given to secure the balance only of such bills as P. & Co. might have paid for C.; that the bills were discounted upon the faith of the letters of credit, and that the holders thereof had no interest in the property released, more especially as against parties who had innocently acquired rights under the release. *Semble*—That P. & Co., being the acceptors of the bills and the principal debtors, a suit might have been sustained against them by the holders of the bills, to have the security while in their hands assigned for the benefit of the creditors. *Held also,* That the recording of the deed of trust could not impart notice to subsequent creditors of any equitable rights in the holders of the bills, as it was not given for their benefit.

*Error to St. Louis Court of Common Pleas.*

*Glover & Shepley,* for plaintiff in error.

I. The deed of trust made by Henry L. Clark to Berthoud & Bernoudy operated to secure to the holders any drafts drawn and negotiated under the letters of credit mentioned in said deed of trust; for,

1. The bills drawn under and authorized under the letter of credit, were already issued at the time of the execution of said deed of trust, and secured by said instrument.

2. The bills held by said plaintiff are not new bills, discounted by them upon new letters of credit, but renewals of bills drawn under the letter of credit already subsisting at the time of the execution of the deed of trust.

3. No change of securities will release the title of the mortgagee so long as the original indebtedness or any portion thereof remains unpaid. (Trip v. Vincent, 3 Barb. Ch. 614; Easton v. Friday, 2 Rich. 427; Handy v. Com. Bank, 10 B. Mon. 98; Smith v. Prince, 14 Conn. 472; Rogers v. Traders' Ins. Co., 6 Paige, 583; Hubbards v. Converse, 24 Verm., as quoted in 11 Am. Law Reg. 8.)

II. The bills thus held by plaintiff being protected and secured by the deed of trust, neither the deed of trust nor any property described in it could be released without the assent of the plaintiff; for,

1. It is conclusively settled in this State that the transfer of a debt carries with it in equity the mortgage security, and that the holder of one of several notes so secured will acquire by the assignment to him an equitable interest in the mortgage. (Anderson v. Baumgartner, 27 Mo. 80, and cases cited in the decision and brief for respondents; Crosby v. Brownson, 2 Day, 425 ; Stevenson et al. v. Block, Saxton, 338 ; Cullum v. Erwin, 4 Ala. 452 ; Cooper v. Ulman, Nolan, Ch. 251.)

2. The plaintiffs, then, having an equitable interest in this deed of trust in the nature of a mortgage, it follows that their rights cannot be divested without some act of their own. (Pratt v. Bank of Bennington, 10 Ver. 293 ; Trenton Banking Co. v. Woodruff, 1 Green, Ch. 117.)

*Lackland, Cline & Jamison,* for defendants in error.

I. The court below did not err in finding for defendants, because,

1. The appellant purchased the bills on the credit and faith of the letter of credit alone. The drawer and acceptors were solvent at the time. The deed of trust was not delivered to the appellant, nor was it seen by the appellant or any of its officers or agents.

2. The deed of trust to Berthoud & Bernoudy, as trustees, did not secure the payment of said bills in the hands of any person or persons except said Perdreauville Bros.

II. The acts of the parties in selling and purchasing the bills were in pursuance of this construction of the deed of trust, and the appellant, as holder of the bill, could not legally have the real estate or any part thereof sold under the provisions of the deed of trust.

III. As the deed of trust only provides for a sale in the event the bills were unpaid and due to Perdreauville Bros.,

at least as to third persons without notice, they had the right to release and direct a deed of release.

IV. Murray advanced, *bona fide*, his money, and took the deed of trust to secure the payment of the same, and at that time the legal title was fully vested in Clark, clear and free of all liens and encumbrances. (1 Sto. Eq., § 64; Parks v. Jackson, 11 Wend. 432–66; Pratt et al. v. Bk. Bennington, 10 Ver. 293; Trenton Bk. v. Woodruff, 1 Green, Ch. 117; Horne et al. v. Graham, 21 Mo. 165; 1 Sto. Eq., §§ 108, 381, 434, 436.)

HOLMES, Judge, delivered the opinion of the court.

It appears that Henry L. Clark, of St. Louis, being desirous of negotiating bills to be endorsed by himself, and drawn upon the firm of Perdreauville Bros., of New Orleans, procured from them their letters of credit, authorizing him to value on them in bills to be drawn and negotiated, from time to time, to the amount of twenty thousand dollars, and for renewals of the same within that limit, and undertaking to accept and pay such bills. The bills were drawn, negotiated and accepted; and in order to get this credit, or to indemnify them against loss on account of their acceptances already made or afterwards to be made under said letters of credit, Clark and wife executed a deed of trust conveying certain real estate, situated in the city of St. Louis, to trustees in trust for their benefit, and to secure the payment to them of whatever amount of such acceptances they should pay on his account. The plaintiffs became the holder of these bills by endorsement from Clark in the usual way of discount to the amount of $6,000, on the faith of the letters of credit which were shown to them by Clark at the time. The deed of trust had been previously recorded. The bills were protested for non-payment, and the acceptors became insolvent. Clark also became insolvent, but in the meantime he had obtained a release and reconveyance of a part of the real estate conveyed by the deed of trust from Perdreauville Bros. and their trustees to himself, which release

was duly recorded, and afterwards executed other deeds of trust on the property so released to other parties, defendants here, to secure new loans obtained from them. The plaintiffs claim that the first deed of trust was given to secure the payment of the bills, as such, to the holders thereof; that when the bills were negotiated to them, the endorsement and assignment of the bills secured carried also an interest in the deed of trust, as a mortgage security made for their benefit; that the release of a part of the property conveyed by the deed of trust by Perdreauville Bros. and their trustees at the instance of Clark, the grantor, without their knowledge or consent, and before the bills held by them had been paid, was a fraud upon their rights, and that the defendants claiming under the other and later deeds of trust were charged with notice of their prior mortgage; and they pray that these deeds and the release may be declared void, and that the real estate in question may be decreed to be sold for their benefit.

The petition proceeds upon a manifestly erroneous construction of this deed of trust, and upon an entirely mistaken view of the essential nature and character of the transaction. The deed conveys the property to trustees for the benefit of the two Perdreauvilles by name, as the sole beneficiaries therein. It recites that letters of credit have already been given to Clark to that amount, in virtue of which bills have from time to time been drawn, and that further letters of credit are intended to be given to authorize him to draw other bills in renewal of those already drawn, and provides that if on the thirty-first day of December, 1860, said Clark shall have fully paid "the amount of each and all the bills" so drawn in virtue of the letters of credit, then the deed shall be void. Perdreauville Bros. were the acceptors and payers of the bills; they had already accepted some and expected to accept others, apparently for the accommodation of the drawer; they take this security for whatever amount may remain unpaid and due to themselves on a certain day; they were to be reimbursed the amount they should so have to pay as acceptors of their bills. And accordingly the deed

of trust appears to have been intended merely to indemnify them against loss on the credit they had given to the drawer, and to secure the repayment to them of the amount which they should so pay. This is all. Neither the payee nor holder, nor any other party to the bills as instruments are secured at all, nor named in any way as beneficiaries. The bills were evidently negotiated upon the personal credit of the parties to the instruments, and upon the faith of the letters of credit, which were merely promises to accept. They fulfil that undertaking, and actually accept the bills. The purchasers could have no other reliance or security than the parties to the bills. If the acceptors took security for their indemnity, that did not directly concern the plaintiffs, nor make them in any way an immediate party in interest in that transaction, and can matter little whether they knew of the deed of trust or not. It was recorded and open to all the world and they may have seen it. It is to be presumed that they took the bills on the faith of the letters of credit, and on the credit of the acceptors and of the drawer, and they may very well have the more readily relied upon the acceptors, if they knew that the drawer had provided them with funds to meet the bills.

The deed of trust further provided that "if the said bills already drawn or hereafter to be drawn upon said Perdreauville Bros. by said Clark, or either of said bills, or any part of them shall remain unpaid and due to said Perdreauville Bros. on the 31st day of December, 1860, that this deed shall remain in force," and the trustees shall proceed to sell. This language is somewhat loose and inartificial, but when considered with reference to the other clauses, and the nature and object of the whole instrument, it becomes apparent that the real meaning is that if the amount which the acceptors shall have paid on account of their acceptances as the payers of the bills shall then still remain unpaid and due to them, and shall not have been repaid to them by Clark, in accordance with the purpose and the trust expressed in the deed as before provided, as a security for such indemnifica-

tion, then the trustees are to sell for their benefit, and pay over to them (not to the holders of the bills) " the amount which may then remain unpaid upon each and all of said bills," so drawn as aforesaid, " under said letter or letters of credit." The bills and the letters are evidently referred to merely for the purpose of ascertaining and defining what indebtedness it is that is intended to be secured to the Perdreauvilles, and on what account it accrued. There is nothing in the instrument which by any reasonable construction can be made to mean that the bills are secured as such for the benefit of the holders, or any other parties to them as such. They are not described in the deed so as to be singly indemnifiable, nor mentioned otherwise than as bills drawn or to be drawn in virtue of the letter of credit. The Perdreauvilles are secured as for so much money advanced and paid to the use of the grantor in the deed in pursuance of the arrangement by which the credit was obtained. Such being the deed of trust, and such the nature of the whole transaction, it is manifest that the doctrine of an assignment of a note or debt secured by a mortgage, being also an assignment so far of the mortgage security (to which many authorities have been cited), can have no proper application to the case.

It is not a security given to the holder, nor to any party under whom he holds the bills; nor does it amount to any kind of guaranty of payment to them, nor to any promise or undertaking on the part of the drawer or acceptors to any person who might upon the faith of such undertaking become the holder by purchase, discount, or otherwise, to pay the same to such holder, if not duly paid by the acceptors at maturity. (Sto. Bills, § 458, No. 1; McLaren v. Watson, 26 Wend. 425.) Such a guarantee by Clark would have been no more available to the plaintiffs than his signature as drawer or endorser.

Again, suppose the drawer had actually deposited funds with the acceptors to the amount of bills drawn, and had obtained on that their letters of credit, and the plaintiff on being informed of the fact and seeing the letters had taken the

bills, and then the acceptors had become insolvent after acceptance and before payment, it is clear the funds would have been lost to both the drawer and the holder. Instead of placing funds in the hands of the acceptors, the drawer obtains a credit and gives a security. The acceptors pay until they become insolvent and can pay no more. The drawer withdraws his security. It is the same thing as a withdrawal of funds from the hands of an insolvent acceptor. To the extent of the acceptance unpaid, the deed of trust ceases to have any object or purpose. It was a security for an anticipated indebtedness which has never come to exist. A party who receives an indemnity can have no claim until he has been damnified.

There is another view of the matter which might seem to deserve some notice. The drawer who gets the money and is the party ultimately liable, is the principal debtor. The acceptors may be considered as in reality his sureties, being merely accommodation acceptors, and they take this security for their indemnity. In equity the doctrine seems to be established, that if a principal has given any securities or pledges to his surety, the creditor is entitled to the benefit of them in the hands of the surety, to be applied in payment of his debt. (1 Sto. Eq. Jur., § 638; Burge on Sur., 324.) In Munro v. Harrison, (1 Eq. Cas., Abr. 83,) it is said that a creditor shall, in a court of equity, have the benefit of all counter bonds or collateral security given by the principal to the surety, " as, if A. owes B. money, and he and C. are bound for it, and A. gives C. a mortgage or bond to indemnify him, B. (the creditor) shall have the benefit of it to recover his debt." And if this security was still subsisting alone in the hands of these acceptors, and this suit had been a petition against them and the drawer to have the deed of trust or the interest of the beneficiaries in it, after their insolvency, assigned to the plaintiff as a security given to a surety for the drawer for the debt owing by him to the plaintiff, we should be inclined to think the plaintiff would have been entitled to such a decree as between those parties. But the

case now stands here in a very different attitude. The Perdreauvilles were liable on their acceptances, though insolvent, and their release of the security under such circumstances, without having paid the bills, might well be decreed a fraud upon this equitable right of the creditor. But there was no such suit while the security remained in their hands. It was actually given up and released by a deed recorded before the other creditors, defendants here, loaned their money on this same real estate, taking deeds of trust without any notice of such fraud. Indeed, the right which the plaintiffs may have had in respect of this security, while it subsisted in the hands of the surety, was no more than a right to maintain a suit in equity to have that security assigned for their benefit. It was certainly not any direct interest in the deed of trust itself as a party to the instrument; and the deed of trust having been released, the mere fact that it had been duly recorded could not impart any notice to their subsequent creditors of any such equitable right, and the security itself had been extinguished. There is nothing in the release which could amount to such notice, nor was there any sufficient evidence to charge them with notice of the fraud. In respect of the equities, therefore, they stand in a better position than that of the plaintiffs. This ground of release was not specially urged by counsel, but they rested their claim mainly, if not entirely, on the ground that the deed of trust was itself a mortgage security for the payment of the bills, as such, and for the direct benefit of the holders, and that as such a mortgage it imparted notice to defendants of their rights in the security. Our conclusion is that the plaintiff was not entitled to recover on either ground.

Exception was taken by the plaintiff to the admission of the testimony of Henry L. Clark, on behalf of his co-defendant, Murray. The statute expressly provides that a party may be a witness for a co-defendant in any matter in which he is not jointly interested, or liable with such other party, and as to whom a separate verdict can be rendered. (Laws of 1856–7, p. 181.) We do not see that there was any such

joint interest or liability on his part as would necessarily exclude him ; nor, in the view we have taken of the case, was the testimony which he gave at all important, or material to the merits of the case.

The same may be said of the testimony of the witness Bogy, to which an exception was taken. There was no ground here for reversing the judgment.

Judgment affirmed. Judge Wagner concurs ; Judge Lovelace absent.